UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NELLIE BAKER,              )
                           )
        Plaintiff,         )
                           )
v.                         )     1:18-cv-01204 (AJT/IDD)
                           )
NANCY A. BERRYHILL,        )
Acting Commissioner of Social Security, )
                           )
        Defendant.         )
_____)

## REPORT AND RECOMMENDATION

This matter is before the Court on the parties' cross-motions for summary judgment. ECF No. 8, 10. Pursuant to 42 U.S.C. § 405(g), Nellie Baker ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423. For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Summary Judgment be **GRANTED** and that Defendant's Motion for Summary Judgment be **DENIED**.

### I. PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on March 18, 2014, alleging disability commencing January 15, 2014, due to epilepsy, lupus, and osteoarthritis. Administrative Record ("R.") at 176-77. After the state agency twice denied Plaintiff's claim, Plaintiff requested an administrative hearing. R. at 10-14, 92-95, 102. The Administrative Law Judge ("ALJ") held a hearing on February 16, 2017. R. at 38-62. On May 11, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act until November 24, 2015. R. at 15-31.

On May 20, 2018, the Appeals Council for the Office of Disability and Adjudication denied Plaintiff's request for review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner for purposes of review under 42 U.S.C. § 405(g). R. at 10-15. Having exhausted her administrative remedies, Plaintiff filed the instant suit challenging the ALJ's decision on September 21, 2018. ECF No. 1. The parties filed cross-motions for summary judgment, and this matter is ripe for disposition.

## II. FACTUAL BACKGROUND

Plaintiff was born on November 25, 1960, and was fifty-four (54) years old on her alleged onset date: February 15, 2013. R. at 176. She has a high school education and no additional vocational training. R. at 29, 199. Plaintiff lives with her husband and father and has a son in college. R. at 42. Plaintiff has not worked since January 2013. R. at 263.

### I. Medical Evidence

On January 27, 2009, Plaintiff underwent an electroencephalographic ("EEG") report for episodes of altered speech, stopping mid-sentence, not finishing her thoughts, and incorrectly naming objects. R. at 331. She also reported generalized tremors that caused her hands to shake. R. at 331. The test results were abnormal and revealed prominent left frontal and temporal slowing with sharply contoured features and independent right frontotemporal slowing. R. at 331. Additionally, a forty-eight-hour ambulatory EEG performed between January 27 and January 29, 2009 revealed left temporal and frontal sharp wave activity, left frontal and temporal slowing, and independent right frontotemporal slowing. R. at 333-34. A brain magnetic resonance imaging ("MRI") conducted on February 27, 2009, also revealed interval development of focal areas of gliosis from remote injury to the centrum semiovale bilaterally. R. at 371. On December 20, 2012, Maria Chou, M.D., diagnosed Plaintiff with lupus that included symptoms of arthralgias, malaise

2

facial rash, nasal and oral ulcers, and gland swelling on the right side of the neck. R. at 425-27. Further examination also revealed connective tissue disease rash present with malar erythema. R. at 427. Plaintiff was prescribed Plaquenil 400mg for flares and Ambien 10mg for her insomnia. R. at 427.

On June 14, 2013, Plaintiff visited the Arthritis & Pain Association Clinic for a lupus flare with complaints of joint pain located in both knees, elbows, and hands. R. at 416. On September 13, 2013, she was seen for a lupus flare with complaints of joint pain located in the neck, both shoulders and both wrists, and two transient episodes of sharp bilateral shoulder and neck pain. R. at 445. Doctor Chou noted that Plaintiff reported short term worsening of her memory. R. at 445. Plaintiff was also seen on January 13, 2014, for joint pain and stiffness and morning stiffness. R. at 451. Doctor Chou noted that symptoms were located in the right knee, both elbows, feet, both hands, and hips. R. at 451.

In records dated February 21, 2014, Plaintiff visited Matthew Churchill, M.D., who noted memory loss and attention difficulty, as well as difficulty finding the correct words. R. at 568. Doctor Churchill also noted Plaintiff was having difficulty remembering if she took her medicine minutes after taking it, was frequently misplacing items, forgetting where she parks, and having trouble remembering what she ate for dinner. R. at 568. On June 24, 2014, Dr. Churchill noted that Plaintiff experienced a good response to the medication. R. at 559.

Due to her progressive memory loss, Plaintiff underwent a brain MRI on March 6, 2014, which confirmed multiple small scattered foci of T2/FLAIR hyperintensity in the supratentorial white matter. R. at 573.

On March 31, 2014, Plaintiff was seen by Dr. Chou for joint pain, joint stiffness, and morning stiffness lasting an hour and a half to two hours. R. at 401. Doctor Chou noted continuing

3

problems with concentration on reading and difficulty with word finding, and stated her family was concerned that she would get lost while driving. R. at 401. Examination revealed anxious mood and affect, Heberden's nodes, and moderate tenderness over the bilateral plantar fascia. R. at 401-04.

Due to increasing cognitive issues, on April 25, 2014, Plaintiff underwent a neuropsychological evaluation by Mary E. Quig, Ph.D., and Corey Burchette, Psy.D. R. at 391-99. They noted a significant medical history for lupus, epilepsy, sleep apnea, excessive fatigue, muscle weakness, numbness and tingling sensations in hands, and osteoarthritis. R. at 391. They further stated that Plaintiff had reported increased pain, increased word finding difficulties, and decreased memory in the six to nine months before her visit. R. at 391. During the neuropsychological evaluation, Plaintiff required instructions to be repeated on the Visual Puzzles and Visual Reproduction tests. R. at 392. The tests revealed: a Verbal Comprehension Index score of 56 (73rd percentile); a Perceptual Reasoning Index score of 47 (38th percentile); a Working Memory Index score of 36 (8th percentile); a Processing Speed Index score of 38 (12th percentile); a Full Scale IQ score of 44 (27th percentile); and General Ability Index score of 52 (58th percentile). R. at 393. Additionally, Verbal Comprehension Subtests revealed scores of 50 in Similarities (50th percentile), 64 in Vocabulary (92nd percentile), and 53 in Information (62nd percentile). R. at 393. Perceptual Reasoning Subtests revealed scores of 43 in Matrix Reasoning (24th percentile), 42 in Block Design (21st percentile), and 58 in Visual Puzzles (79th percentile). R. at 393. Working Memory Subtests revealed scores of 36 in Digit Span (8th percentile), 39 in Arithmetic (14th percentile), and 51 in Letter-Numbering Sequence (54th percentile). R. at 393. Processing Speed Subtests revealed scores of 38 in Coding (12th percentile) and 40 in Symbol Search (16th percentile). R. at 393. The evaluation also indicates that there is evidence of multiple

neurocognitive strengths: Plaintiff performed within normal limits on measures of orientation, abstract reasoning, word reading recognition, word finding, expressive fluency, word knowledge, visuo-spatial copy, novel visuo-constructional problem solving, times visuo-spatial reasoning, word list learning, story recognition memory, auditory-verbal cognitive processing speed, visual mental flexibility, and dominant hand fine motor speed. R. at 396.

Doctors Quig and Burchette stated that Plaintiff's performance was lower than expected on measures of visual symbol search scanning, mental arithmetic, visuo-motor perceptual speed, and auditory attention span. R. at 394. They also found that measures of cognitive processing speed and visual scanning and psychomotor speed were inconsistent. R. at 394. Overall, they found that Plaintiff's neuropsychological profile was suggestive of a diagnosis of Cognitive Disorder Not Otherwise Specified ("NOS"), which resulted in an impaired measure of fine motor coordination and dexterity, sustained attention, numeric visual scanning, delay word list memory, word list recognition memory, visual learning, and visual recognition memory. R. at 397-99.

Between April 2015 and October 2016, Plaintiff was evaluated at Access Eye Centers to assess Plaquenil toxicity. R. at 292. Testing on April 6, 2015 revealed significant difference of 19.5 between latency low contrast in each eye. R. at 292. Plaintiff also complained of decreased vision in both eyes. R. at 292. Plaintiff was diagnosed with presbyopia and instructed to follow-up with an optometrist for a glasses check. R. at 292. On October 7, 2016, Plaintiff complained of decreased distance vision bilaterally and was diagnosed with bilateral hypermetropia and bilateral astigmatism. R. at 601.

Between June 2015 and December 2016, Plaintiff also visited the Neurology Center of Fairfax due to epilepsy and recurrent seizures, memory lapses or loss, carpal tunnel syndrome, headache syndrome, systemic lupus erythematosus ("SLE"), and a concussion. R. at 609-25. On

June 15, 2015, Dr. Churchill noted that Plaintiff had decided Ritalin had not been helping her cognition and may have been causing headaches. R. at 611.

Plaintiff also visited the Neurology Center of Fairfax from August 26, 2008 through December 9, 2016. R. at 25. During this time, comprehensive diagnoses included lupus, epilepsy and recurrent seizures, and memory lapses. R. at 25. Progress notes from August 26, 2013, revealed that Plaintiff did not have any new seizure-like episodes. R. at 25. On March 6, 2014, an MRI of the brain revealed no significant change in small scattered foci of T2/flair hyper-intensity in the white matter, as well as no acute intracranial abnormality. R. at 25, 299, 573. On June 14, 2014, progress notes stated Plaintiff was responding well to treatment. R. at 25.

## II.   State Medical Consultant Opinion Evidence

In the Psychiatric Review Technique completed on November 5, 2014, Disability Determination Services ("DDS") review psychologist, Hillel Raclaw, Ph.D., considered Plaintiff's limitations under Listing 12.02, Organic Mental Disorders. R. at 66-68. Doctor Raclaw assigned mild to moderate limitations and noted a restriction of activities of daily living, plus difficulties in maintaining social functioning, concentration, persistence, or pace. R. at 66-68. Doctor Raclaw also completed a Mental Residual Functional Capacity Assessment, in which he acknowledged Plaintiff's understanding and memory limitations, and sustained concentration and persistence limitations. R. at 71-72. He opined that she retained the ability to understand, sustain focus, use her memory, and adjust to simple rote occupational activity. R. at 71-72.

In a residual functional capacity ("RFC") Assessment conducted on November 10, 2014, DDS review physician, John Shane, M.D., reported exertional limitations involving lifting and carrying ten pounds frequently and twenty pounds occasionally, standing or walking about six hours in an eight-hour workday, and sitting about six hours in an eight-hour workday. R. at 69-71.

He assessed a capacity for light work and discounted the diagnoses made by Plaintiff's treating physicians, stating "she does not have SLE." R. at 69-71. He also reported that Plaintiff is morbidly obese and that "symptoms are exaggerated beyond what is supported by the MERs." R. at 69-71. The initial level assessment was that Plaintiff is limited to unskilled light work. R. at 69-71.

In the Psychiatric Review Technique completed on April 28, 2015, DDS review psychologist, Joseph Leizer, Ph.D., considered Plaintiff's limitations under Listing 12.02, Organic Mental Disorders. R. at 77-88. He assigned mild to moderate limitations and noted difficulties in maintaining social functioning, concentration, persistence, and pace. R. at 77-88. He also completed a Mental RFC assessment, in which he acknowledged Plaintiff's understanding and memory limitations and sustained concentration and persistence limitations. R. at 77-88. He opined that she could follow simple instructions, but would have difficulties with more complex instructions and recommended breaks during an eight-hour workday. R. at 77-88. He did not, however, indicate the number of breaks she would need to complete an eight-hour workday. R. at 77-88.

Physician Jack Hutcheson, M.D., completed an RFC Assessment on April 24, 2015, where he arrived at the same conclusion as Dr. Shane in the November 25, 2014 RFC Assessment. R. at 88-90. Doctor Hutcheson similarly found that Plaintiff was limited to unskilled light work. R. at 89-90.

## II. Administrative Hearing Testimony

On February 16, 2017, Plaintiff testified before an ALJ. R. 38-62. Plaintiff testified she lives with her husband who works outside of the home and has no children living with her. R. 42-43. Plaintiff testified that she worked until 2013 collecting data. R. at 44. Plaintiff also testified that she received unemployment benefits for some time, but does not remember how long. R. at

7

44. Plaintiff has not received Worker's Compensation or short- or long-term disability. R. at 44.

Plaintiff testified that she takes Keppra for seizures; Plaquenil, Feldene, and Cymbalta for lupus; Tylenol 3 for pain; a vitamin D supplement; and a sleep aid. R. at 45-46. Plaintiff testified that she consults Dr. Chou and Dr. Churchill for her memory problems. R. at 47. Plaintiff also testified that she gets headaches more than once a week and has to sleep to get rid of them due to light sensitivity. R. at 47. Plaintiff testified that she feels pain from the lupus, but that her worst symptom is the memory loss. R. at 48.

Plaintiff's husband, Timothy Baker, also testified at the hearing. R. at 50. Mr. Baker testified that towards the end of Plaintiff's last employment in 2012, she began working from home because it was easier for her. R. at 52. Mr. Baker stated that he began to notice symptoms of confusion after coming home from a work trip and that he first took Plaintiff to the hospital towards the end of 2012. R. at. 53. Mr. Baker also explained that Plaintiff can perform certain tasks if they are routine, but that she still struggles with finishing sentences. R. at 54. As to Plaintiff's headaches, Mr. Baker testified that when Plaintiff first experienced them, they occurred about three or four times a week and were very severe, but that they had since decreased to one or two times a week and are less severe. R. at 54. Mr. Baker confirmed that once Plaintiff has a headache, she can only get through them by going to sleep. R. at 54. As to Plaintiff's lupus diagnosis, Mr. Baker testified that Plaintiff walks slower, tires faster, and becomes confused in the middle of a task. R. at 56.

A vocational expert ("VE"), Kathleen F. Sanpack, also testified at the hearing. R. at 57-62. The ALJ posed three hypotheticals for the VE to answer. R. at 59-61. The ALJ's hypotheticals assumed an individual of the same age, education, and work experience as Plaintiff. R. at 59-61.

For the first hypothetical, the ALJ instructed the VE to assume an individual of Plaintiff's

8

age, education, and work experience; with a residual functional capacity to perform light work; able to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but can never climb ladders, ropes, and scaffolds; avoid all exposure to hazards; able to understand, remember, apply, and carry out unskilled, simple, repetitive tasks that do not require stringent quotas or fast pace; able to perform tasks that involve work primarily with objects rather than people or data; and work in settings with levels of illumination similar to that found in a typical office setting, but must avoid work in sustained direct sunlight. R. at 59. The VE testified that the hypothetical individual would be able to work in unskilled jobs with light exertional level, such as copy machine operator, mail sorter, and package sorter. R. at 60. The VE testified that Plaintiff has not acquired any skills in her past relevant work that would transfer to the jobs described in the hypothetical with little vocational adjustment in terms of tools, word processors, settings or industry. R. at 60.

For the second hypothetical, the ALJ instructed the VE to assume the same limitations and add that the hypothetical individual would be off task fifteen percent of the time. R. at 60. The VE testified that, based on experience, this would exceed employer tolerances. R. at 60. The VE also testified there would not be any jobs available for the second hypothetical individual. R. at 60.

For the third hypothetical, the ALJ instructed the VE to assume the same limitations in the first hypothetical and add that the hypothetical individual would frequently require instructions to be repeated or re-demonstrated. R. at 60-61. Based on her professional experience, the VE testified no jobs would remain for the third hypothetical individual. R. at 61.

Similarly, when Plaintiff's attorney questioned the VE, the VE testified that if the hypothetical individual missed two or more days per month, there would not be any jobs available because it would exceed employer tolerances for absenteeism. R. at 61.

9

### III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, this Court is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is more than a mere scintilla but less than a preponderance of the evidence. *Craig*, 76 F.3d at 589. If the ALJ's determination is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the district court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In reviewing the record for substantial evidence, the court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). The Commissioner's factual findings, if supported by substantial evidence, are conclusive and must be affirmed. *Perales*, 402 U.S. at 390.

The Fourth Circuit applies a harmless error analysis in the context of social security disability determinations. *See Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015); *Hammond v. Colvin*, No. 1:12-CV-01177(AJT), 2013 WL 5972432, at *6 (E.D.Va. Nov. 8, 2013). The harmless error doctrine prevents a remand when the ALJ's decision is "overwhelmingly supported by the record though the agency's original opinion failed to marshal that support" and a remand would be "a waste of time." *Williams v. Berryhill*, No. 1:17-CV-167(TCB), 2018 WL 851259, at *8 (E.D. Va. Jan. 18, 2018) (citing *Bishop v. Comm'r of Soc. Sec.*, 583 Fed.Appx. 65,

67 (4th Cir. 2014) (*per curiam*)). An ALJ's error may be deemed harmless when a court can conclude on the basis of the ALJ's entire opinion that the error did not substantively prejudice the claimant. *See Lee v. Colvin*, No. 2:16-CV-61(RJK), 2016 WL 7404722, at *8 (E.D. Va. Nov. 29, 2016). When reviewing a decision for harmless error, a court must look at "[a]n estimation of the likelihood that the result would have been different." *See Morton-Thompson v. Colvin*, No. 3:14-CV-179(REP), 2015 WL 5561210, at *7 (E.D. Va. Aug. 19, 2015) (citing *Shineski v. Sanders*, 556 U.S. 396, 411–12 (2009)).

### III. ANALYSIS

#### A. Determining Disability and the Sequential Analysis

The Social Security Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To meet this definition, the claimant must have a severe impairment or impairments that make it impossible to do past relevant work or any other substantial gainful activity that exists in the national economy. *Id. See also Heckler v. Campbell*, 461 U.S. 458, 460 (1983). The ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine the claimant's eligibility. Specifically, the ALJ must consider whether the claimant: (1) is engaged in substantial gainful activity;[1] (2) has a severe impairment; (3) has an impairment that equals a condition contained within the Social Security Administration's official Listing of Impairments; (4) has an

---

[1] Substantial gainful activity ("SGA") is work that is both substantial and gainful as defined by the Agency in the Code of Federal Regulations. Substantial work activity "involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks, hobbies, therapy, school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

impairment that prevents past relevant work;[2] and (5) has an impairment that prevents her from any substantial gainful employment. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). After step three of the analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)–(f), 416.945(a)(1). *Morris v. Berryhill*, No. 3:16-CV-587(MHL), 2017 WL 4112365, at *6 (E.D. Va. Aug. 30, 2017), *report and recommendation adopted*, 2017 WL 4108939 (E.D. Va. Sept. 15, 2017).

### B. ALJ's Findings

In accordance with the five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law. At step one, the ALJ determined that Plaintiff has not engaged in SGA since the alleged onset date, February 15, 2013. R. at 21. At step two, the ALJ concluded that Plaintiff suffered from the following severe impairments: systemic lupus erythematosus and mild cognitive disorder/memory loss. R. at 21. At step three, the ALJ found that none of the impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. R. at 22. At step four, the ALJ found that Plaintiff has the residual functional capacity to perform light work, but is unable to perform any past relevant work. R. at 23, 29. At step five, the ALJ determined that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ramps and stairs, stoop, kneel, balance, crouch, and crawl. She can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. She should avoid all exposure to hazards. She is able to understand, remember and carryout unskilled, simple, routine tasks that do not require stringent production or fast pace. She is able to perform tasks that involves work primarily with objects rather than people or data. She can work in settings with levels of illumination similar to that found in a typical office setting, but cannot work in sustained direct sunlight.

---

[2] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 404.1560(b), 404.1565(a).

R. at 23. Therefore, the ALJ determined that Plaintiff has the capacity to perform light work and that based on the application for DIB filed on March 17, 2014, Plaintiff has been disabled since November 24, 2015. R. at 30-31.

### C. Cross-Motions for Summary Judgment

Plaintiff claims that the ALJ erroneously (1) assessed Plaintiff's RFC and (2) erroneously evaluated the Plaintiff's subjective complaints. Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") at 10-18. Defendant seeks summary judgment on the ground that the ALJ's decision is supported by substantial evidence. Mem. of Law in Supp. of Def.'s Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Mem.") at 6. The undersigned addresses each of Plaintiff's claims of error and finds that remand is appropriate.

#### 1. Applicable Law

In reviewing the Commissioner's decision to deny benefits, this Court must determine whether the ALJ's decision was supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Johnson*, 434 F.3d at 653. An ALJ is required to analyze all relevant evidence and sufficiently explain his or her findings. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997). "Unless [an ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits," a reviewing court cannot find that the ALJ's decision is supported by substantial evidence. *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977).

As previously discussed, this Court reviews an ALJ's disability determination in social security cases using a harmless error analysis. *See Mascio*, 780 F.3d at 639; *Hammond*, 2013 WL 5972432, at *6. An ALJ commits harmful error when he fails to discuss all of the relevant evidence.

*See Morton-Thompson*, 2015 WL 5561210, at *7; *James v. Colvin*, No. 3:13-CV-547(JRS), 2014 WL 4630598, at *17 (E.D. Va. Sept. 11, 2014).

### a. Evaluation of Error 1

In Plaintiff's first claim of error, she contends the ALJ erred in assessing her RFC because the ALJ failed to perform the required function-by-function evaluation. Pl.'s Mem. at 10-16. Plaintiff contends the ALJ erred in that she failed to (1) adequately address Plaintiff's migraine headaches and (2) set forth a narrative discussion establishing how the evidence supported each conclusion. Pl.'s Mem. at 12-14, 14-16. Specifically, Plaintiff alleged the ALJ failed to properly assess Plaintiff's limitations by neglecting to discuss Plaintiff's migraine headaches, and by failing to provide an explanation supporting her finding that Plaintiff possessed the RFC to perform light work. Pl.'s Mem. at 12-15. On the other hand, Defendant argues the ALJ properly evaluated the Plaintiff's RFC because the Plaintiff never received treatment for migraine headaches and only raised the issue at her administrative hearing, Def.'s Mem. at 7, and argues the ALJ provided reasons for finding that Plaintiff was not fully credible, Def.'s Mem. at 12.

The Fourth Circuit has declined to adopt a *per se* rule requiring courts to remand whenever an ALJ fails to conduct a function-by-function analysis. *See Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016); *Mascio,* 780 F.3d at 636. Instead, the Fourth Circuit holds the position that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (*per curiam*)). *See also Monroe*, 826 F.3d at 188. The Fourth Circuit has found harmful error where an ALJ's decision precludes meaningful review. *Mascio*, 780 F.3d at 636–37. The *Mascio* standard is satisfied if the ALJ (1) fashions an appropriately

14

limited RFC or (2) performs a function-by-function analysis that explains, either explicitly or implicitly, why additional limitations are not necessary. *Oldham v. Berryhill*, No. 2:16-CV-659(DEM), 2018 WL 773442, at *8 (E.D. Va. Jan. 17, 2018).

An ALJ's RFC determination, as with all other steps in determining a plaintiff's disability status in social security matters, is subject to the "substantial evidence" standard of review, which is explained above. "A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ must identify evidence that supports his or her conclusion and "build an accurate and logical bridge from [that] evidence to his conclusion." *Woods*, 888 F.3d at 694 (citing *Monroe*, 826 F.3d at 189).

In assessing a plaintiff's RFC, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (citing *Mascio*, 780 F.3d at 636). *See also Arthur v. Berryhill*, No. 3:17-CV-285(HEH), 2018 WL 3233362, at *11 (E.D. Va. June 12, 2018), *report and recommendation adopted*, 2018 WL 3232777 (E.D. Va. July 2, 2018); *Baker v. Colvin*, No. 3:15-CV-00637(HEH), 2016 WL 3581859, at *3 (E.D. Va. June 7, 2016). An ALJ's narrative discussion must explain how the evidence demonstrates the plaintiff could perform at the exertion level designated by the ALJ. *Woods*, 888 F.3d at 694. The ALJ must also ascribe more weight to treating physicians than to physicians who have only occasionally treated a claimant. 20 C.F.R. § 416.927(a)(2), (c)(2); *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017); *Brown v. Comm'r Soc. Sec. Admin.*, 873

F.3d 251, 261 (4th Cir. 2017).

Treating physicians are given more weight because they are most likely to be able to provide a detailed picture of a claimant's medical diagnosis and impairments. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Lewis,* 858 F.3d at 867. An ALJ may credit a non-treating physician over a treating physician only if there is: (1) "supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings;" (2) "consistency between the opinion and the record as a whole;" and (3) "specialization in the subject matter of the opinion." *Brown*, 873 F.3d at 268.

Here, the ALJ failed to provide a function-by-function analysis of Plaintiff's migraine headaches despite acknowledging Plaintiff's complaint of headaches and light sensitivity on multiple occasions. R. at 24, 25, 26. Despite medical evidence indicating that Plaintiff struggled with headaches for an extended period of time, the ALJ concluded that Plaintiff's history of migraines are not disabling without explaining why. Defendant argues that the first time Plaintiff mentioned migraines was in the administrative law hearing, however, the record indicates that Plaintiff had a history of migraines. R. at 609. Doctor Churchill noted that Plaintiff has prior migraine and headache history. R. at 609. Additionally, upon hearing that Plaintiff was suffering from migraines at the administrative law hearing, the ALJ should have reviewed the record for this impairment and discussed it in her RFC analysis. The ALJ neglected to discuss medical records detailing Plaintiff's medical history of migraines and how they would not prevent her from performing light work. The Court, therefore, cannot agree with Defendant that the omission was harmless. The case should be remanded so that the ALJ factors in and provides a narrative discussion of Plaintiff's complaint of migraines to the RFC analysis.

With regard to Plaintiff's argument that the ALJ failed to provide an analysis to explain

Plaintiff's RFC, the Court partially disagrees. Defendant is correct in pointing out that an ALJ is not required to use any particular language in reviewing and explaining the record as long as there is sufficient development of the record and explanation of the findings. *See Gassaway v. Colvin*, 2013 WL 2389894, * 6 (E.D. Va. May 28, 2013). The ALJ in this case did exactly that for some of its RFC determinations. The ALJ provided an analysis for the determination that Plaintiff could carry out simple, routine tasks when she found that the medical evidence indicated Plaintiff could stand, walk, and move about normally, she has the ability to take care of personal needs, and Plaintiff's restrictions only mildly restrict her daily activities. R. at 28. However, the ALJ did not provide a narrative discussion regarding the RFC determination that Plaintiff could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. The ALJ merely stated that Plaintiff can stand, walk, and move about normally, R. at 28, but this does not mean that Plaintiff can stoop, kneel, crouch, crawl, or climb ramps or stairs. Another example of an insufficient narrative discussion is the ALJ's RFC determination that Plaintiff can only work in settings with levels of illuminations similar to that found in a typical office setting. R. at 23. Again, the ALJ does not provide a narration of how the medical evidence supports this conclusion. The ALJ did not form a logical bridge between all RFC determinations and the medical evidence. Therefore, the undersigned finds that the case also be remanded on this ground for further analysis of the ALJ's RFC determinations and the medical evidence. *Mascio*, 780 F.3d at 636 ("[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.").

17

### b. Evaluation of Error 2

Plaintiff's second argument is that the ALJ erroneously evaluated Plaintiff's subjective complaints. She contends the ALJ erred by failing to explain how she considered Plaintiff's subjective complaints. Pl.'s Mem. at 16-18. Specifically, Plaintiff asserts the ALJ failed to provide any explanation as to why some statements Plaintiff made were credible and others were not. Pl.'s Mem. at 16. Lastly, Plaintiff argues the evidence in the record does not support the ALJ's finding regarding the extent of Plaintiff's daily activities. Pl.'s Mem. at 16-17. The Court again agrees with Plaintiff.

The Fourth Circuit held that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591. Although an ALJ's "failure to cite specific evidence does not establish that the ALJ failed to consider it," *Phillips v. Barnhart*, 91 Fed. App'x 775, 780 n.7 (3d Cir. 2004), an ALJ must discuss all *relevant* evidence because failure to do so is harmful error. *See Morton-Thompson*, 2015 WL 5561210 at *7; *James*, 2014 WL 4630598 at *17. When analyzing a claimant's subjective complaints, an ALJ must follow a two-step analysis. *See Lewis*, 858 F.3d at 865-66. The ALJ must (1) "look[] for objective medical evidence showing a condition that could reasonably produce the alleged symptoms" and (2) "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities." *Id.* at 866. Here, the Court finds that the ALJ did not follow step two of the analysis.

The ALJ did review the record for objective medical evidence that would produce Plaintiff's symptoms but failed to evaluate the intensity, persistence, and limiting effects of

18

Plaintiff's symptoms to determine the extent to which they limited her ability to perform basic work activities. For example, with regard to Plaintiff's memory loss, the ALJ merely concedes that Plaintiff has mild memory loss, R. at. 28, and does not evaluate the intensity, persistence, and limiting effects of Plaintiff's inability to remember to determine the extent to which they limited her ability to perform basis work activities. The ALJ notes that Plaintiff's headaches were related to medication and that Plaintiff is capable of performing "robust" daily activities, R. at 28, however she does not conduct any further analysis regarding Plaintiff's memory loss and mental capabilities. R. at 28. The ALJ failed to build a logical bridge between Plaintiff's ability to perform daily activities and her mental capability. Accordingly, the case also should be remanded for further evaluation of the intensity, persistence, and limiting effects of Plaintiff's memory loss symptoms to determine the extent to which they limit her ability to perform basic work activities.

## IV. RECOMMENDATION

**For the reasons set forth above, the undersigned Magistrate Judge recommends that Plaintiff's Motion for Summary Judgment be GRANTED and Defendant's Motion for Summary Judgment be DENIED. The case should be remanded for further analysis.**

## V. NOTICE

By mailing copies of this Report and Recommendation, the parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record.

                                                 /s/
                                            Ivan D. Davis
                                            United States Magistrate Judge

August 12, 2019
Alexandria, Virginia